No. 04-716

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 94

TIMOTHY D. MARTZ and
ROBIN JEAN MARTZ,

          Plaintiffs and Appellants,

     v.

BENEFICIAL MONTANA, INC., d/b/a
BENEFICIAL MORTGAGE CO., a Delaware
corporation; HOUSEHOLD INTERNATIONAL,
INC., a Delaware corporation; EMMET
MATHEWS and JOHN DOES I – X,

          Defendants and Respondents.

| | |
|---|---|
| APPEAL FROM: | The District Court of the Sixth Judicial District, In and For the County of Park, Cause No. DV 2004-191, Honorable Wm. Nels Swandal, Presiding Judge |

COUNSEL OF RECORD:

       For Appellants:

            Thomas E. Boland, Attorney at Law, Great Falls, Montana

            Jeremiah C. Lynch, Attorney at Law, Great Falls, Montana

       For Respondents:

            Dan G. Cederberg and Benjamin P. Hursh, Cederberg Law Office, Missoula, Montana

                    Submitted on Briefs:  November 9, 2005

                    Decided:  May 4, 2006

Filed:

                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellants Timothy and Robin Martz appeal from the order of the Sixth Judicial District Court granting Respondent Beneficial Montana, Inc.'s motion to compel arbitration. Appellants contend that arbitration is inappropriate because the contract is void *ab initio* and the arbitration provision is unconscionable. We affirm.

¶2 In reviewing the District Court's order compelling arbitration, we consider the following issues on appeal:

¶3 (1) When a contract containing an arbitration clause is challenged in its entirety, who is the appropriate adjudicator, an arbitrator or the district court?

¶4 (2) Have Appellants preserved for appeal the issue of the arbitration clause's unconscionability?

**BACKGROUND**

¶5 Licensed as a consumer loan business in Montana, Beneficial Montana, Inc. (Beneficial) loaned $25,000 to Timothy and Robin Martz (the Martzes) in November of 1997. The loan included a "loan origination fee" of $500, a "document preparation fee" of $350, and a substantial "Prepayment Penalty Charge." Thereafter, and over the course of the next three years, the Martzes refinanced their Beneficial loan on two occasions, the second of which occurred on or about October 18, 2000. After the second refinancing, the Martzes' loan principal rose to approximately $112,000. Pursuant to the contracts, the Martzes pledged their home as collateral.

¶6     Critical to the present dispute, Beneficial incorporated an arbitration rider into the refinancing loan agreement of October 18, 2000.  The Martzes were not represented by counsel at that time, and signed that agreement without discussion. Beneficial has since admitted that the contract of October 18, 2000, was one of adhesion as defined by Montana law.

¶7     The Martzes defaulted on their loan in mid-2004, after which Beneficial initiated non-judicial foreclosure proceedings upon the Martzes' home.  In response, the Martzes initiated the present proceedings in the Sixth Judicial District Court, alleging that the loan contracts were void *ab initio*, as violative of Montana's Consumer Loan Act, Montana's Unfair Trade Practices Act, and various other laws.  Importantly, the Martzes' complaint challenged the validity of the contracts as a whole, and did not challenge the arbitration clause specifically.

¶8     In response to the Martzes' complaint, Beneficial moved to compel arbitration.  In support, Beneficial argued that where contracts contain arbitration provisions, challenges to the contract as a whole are to be decided by an arbitrator.  The Martzes countered on July 7, 2004, arguing that the motion to compel arbitration should be denied because the "*underlying contract* made by Beneficial to the Martzes is the product of illegality, fraud, and unconscionability."  (Emphasis added.)  Notwithstanding the Martzes' arguments, the District Court granted Beneficial's motion to compel arbitration.

¶9     In response to the District Court's order, the Martzes filed a motion for reconsideration.  In that motion, the Martzes renewed their objections to the contract as a

3

whole, but further, specifically challenged the validity of the arbitration provision for the first time, alleging that the provision was void as unconscionable. Beneficial responded to that motion shortly thereafter by noting that, "[a] review of these arguments shows Plaintiffs have used the request for reconsideration to revisit matters previously ruled on and to present [two] new theories in support of their position," and asked the District Court to "decline Plaintiff's request for a second bite at the apple . . . ." The District Court, however, did not rule on the motion. Instead, two weeks after filing the motion, the Martzes appealed to this Court, thereby depriving the District Court of jurisdiction over their pending motion.

## STANDARDS OF REVIEW

¶10 We review a district court's order granting a motion to compel arbitration *de novo*. *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 17, 293 Mont. 512, ¶ 17, 977 P.2d 989, ¶ 17. We review a district court's conclusions of law to determine if they are correct. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

## DISCUSSION

*Issue #1: When a contract containing an arbitration clause is challenged in its entirety, who is the appropriate adjudicator, an arbitrator or the district court?*

¶11 The initial question presented here is whether a court or an arbitrator decides the question of a contract's validity where the contract contains an arbitration provision. Beneficial argues that federal law requires that challenges to contracts in their entirety be made to an arbitrator, even where those contracts contain arbitration provisions. The Martzes, on the other hand, argue that even where contracts contain arbitration

4

provisions, challenges to the contract as a whole must be heard by courts, since void contracts would necessarily invalidate any included arbitration provisions. In light of rulings by the United States Supreme Court, we conclude that Beneficial's argument must prevail.

¶12 The law governing arbitration is expansive and complicated. Initially, and undisputed by the parties here, it is clear that the Federal Arbitration Act (FAA) governs the arbitration clause at issue, since the clause arose within a transaction "involving commerce." *See* Federal Arbitration Act, 9 U.S.C. § 2; *Iwen*, ¶ 23; *Prima Paint Corp. v. Flood & Conklin MFG. Co.* (1967), 388 U.S. 395, 401, 87 S.Ct. 1801, 1804-05, 18 L.Ed.2d 1270, 1275-76. As we have noted in the past, the Federal Arbitration Act evidences a federal policy in favor of arbitration. *Iwen*, ¶ 26; *see also Buckeye Check Cashing, Inc. v. Cardegna* (2006), 546 U.S. ____, 126 S.Ct. 1204, 1207-08, 163 L.Ed.2d 1038, 1042. Further, of utmost importance here, the FAA "create[d] a body of federal substantive law" which is "applicable in state and federal courts." *Southland Corp. v. Keating* (1984), 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1, 13; *see also Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1208-09, 163 L.Ed.2d at 1044.

¶13 The parties vigorously dispute whether a challenge to the entirety of a contract ought to be heard by an arbitrator or a court where the contract contains an arbitration provision. Further, both parties cite cases which are supportive of their respective positions. The United States Supreme Court, however, recently considered an issue nearly identical to the one before us today, namely, whether and when an arbitrator

5

should hear challenges to a contract's validity when the contract contains an arbitration clause and one party brings suit in federal or state court. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1207, 163 L.Ed.2d at 1041. Notwithstanding the parties' arguments, this case answers the question presented.

¶14 In *Buckeye Check Cashing*, respondents Cardegna and Reuter entered into various deferred-payment transactions with petitioner Buckeye Check Cashing, allowing respondents to receive cash in exchange for personal checks. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1207, 163 L.Ed.2d at 1041. Importantly, each time the respondents cashed a check, they signed a form contract which included an arbitration provision. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1207, 163 L.Ed.2d at 1041. Thereafter, the respondents brought suit in Florida state court, alleging that the contracts violated various Florida lending and consumer-protection laws, rendering the contracts criminal on their face. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1207, 163 L.Ed.2d at 1042. As in the case before us, the petitioner moved to compel arbitration pursuant to the arbitration provision, resulting in a dispute regarding a district court's power to hear challenges to contracts containing arbitration clauses. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1207, 163 L.Ed.2d at 1042.

¶15 The United States Supreme Court, in a seven-to-one decision, defined key parameters of arbitration law, and outlined three relevant principles. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1044. First, the Court reaffirmed a principle first articulated in *Prima Paint*, stating that "as a matter of

6

substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."[1] *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1044; *see also Prima Paint Corp.*, 388 U.S. at 403-04, 87 S.Ct. at 1805-06, 18 L.Ed.2d at 1276-77. Second, and critical to the issue before us today, the Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1044; *see also Prima Paint Corp.*, 388 U.S. at 403-04, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. The corollary to that, of course, is that where one challenges an arbitration clause specifically, a court may adjudicate the challenge. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1043-44; *see also Prima Paint Corp.*, 388 U.S. at 403-04, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. Finally, the Court reiterated that these principles applied in state as well as federal courts. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1044; *Southland Corp.*, 465 U.S. at 12, 104 S.Ct. at 859, 79 L.Ed.2d at 13.

¶16 In support of their argument that the District Court erred in compelling arbitration of their general contract claims, the Martzes argue that "[w]hile some federal courts have broadly construed *Prima Paint* to require the arbitration of any claim unless there has

---

[1] The Court noted that this principle supersedes any state law on severability. Therefore, regardless of whether state law allows severability, severability of arbitration clauses is always possible in state and federal court. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1208, 163 L.Ed.2d at 1043 ("[In *Prima Paint*] [w]e rejected the view that the question of 'severability' was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court.").

been an independent challenge to the making of the arbitration clause itself, other federal courts have, on better reasoning, read *Prima Paint* more narrowly, limiting its application to challenges based solely upon fraud in the inducement of the underlying contract." Recognizing that *Buckeye Check Cashing* was yet undecided when the Martzes filed their brief in this matter, we are nevertheless forced to conclude that, after *Buckeye Check Cashing*, the Martzes' argument is without merit.

¶17    The United States Supreme Court stated clearly that, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1210, 163 L.Ed.2d at 1046. It further implied that this has been the law since its 1967 decision in *Prima Paint*. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209-10, 163 L.Ed.2d at 1044-45. Finally, in response to a policy argument similar to the one the Martzes make today—that it would be unfair to force arbitration upon a party when the underlying contract's validity is in question—the Court made the following observation:

> [i]t is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions.

*Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1210, 163 L.Ed.2d at 1045-46.

Thus, the United States Supreme Court made clear that arbitration, not court, is the

8

proper forum for challenges to contracts as a whole where those contracts contain arbitration provisions.

¶18　As a result of the *Prima Paint, Southland Corp.,* and *Buckeye Check Cashing* line of cases, we can say the following with certainty, if not enthusiasm: (1) Where a complaint challenges a contract's arbitration clause specifically, the *Prima Paint* doctrine of severability in conjunction with the FAA allows a court to hear the challenge, and (2) where a complaint challenges a contract as a whole, *Prima Paint* and *Buckeye Check Cashing* require a court to grant a motion to compel arbitration if the contract contains an arbitration provision. Thus, bound as it was by the Martzes' challenge to the contract as a whole, the District Court's order granting Beneficial's motion to compel arbitration was correct. On appeal, the Martzes continue to argue that the loan contracts which they signed violate the proscriptions of the Montana Consumer Loan Act, and therefore, are void *ab initio*. However, for the reasons stated above, we hold that such challenges to the contract as a whole are properly decided via arbitration, given the existence of an arbitration clause.

***Issue #2: Have Appellants preserved for appeal the issue of the arbitration clause's unconscionability?***

¶19　Before this Court, the Martzes challenge not only the validity of the contract as a whole, but the conscionability of the arbitration clause as well. After *Buckeye Check Cashing*, it is evident that the latter issue is to be adjudicated by a district court. *Buckeye Check Cashing*, 546 U.S. at ___, 126 S.Ct. at 1209, 163 L.Ed.2d at 1043-44. However, Beneficial argues that the conscionability of the arbitration clause was never properly

9

raised before the District Court, and therefore, urges us not to review the matter for the first time on appeal. After reviewing the record and the order of the District Court, we must agree with Beneficial—the conscionability of the arbitration clause was never properly before the District Court.

¶20    The Martzes initiated this action in the Sixth Judicial District Court on June 11, 2004. In their complaint, the Martzes challenged the Beneficial contracts as violating the Montana Consumer Loan Act, the Montana Unfair Trade Practices Act, and other state laws, and further, prayed for punitive and exemplary damages, as well as attorney fees. However, while it is clear that the Martzes challenged the contract as a whole as violating state law, the complaint simply cannot be construed as having challenged the conscionability of the arbitration clause specifically. Indeed, the complaint says nothing of the arbitration clause itself, and though it does use the word "unconscionable" once, the context is in a challenge to the contract as a whole.

¶21    In response to the Martzes' complaint, Beneficial moved to compel arbitration on June 22, 2004. The Martzes then filed responsive pleadings opposing the motion, but again failed to challenge the arbitration clause as unconscionable. We note that, although the Martzes' brief in opposition to Beneficial's motion to compel arbitration included a section entitled "**THE ARBITRATION PROVISION IS UNENFORCEABLE**," the argument offered therein by the Martzes was that the arbitration clause was invalid because the *underlying contract* violated the Montana Consumer Lending Act, the same argument we addressed above. Nowhere in the Martzes' responsive pleading did they

10

argue that the arbitration clause itself, separate from the contract as a whole, was unconscionable.

¶22 This Court has previously addressed the conscionability of arbitration clauses, and further, has outlined the factual issues that should accompany such arguments. *See Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 30, 310 Mont. 123, ¶ 30, 54 P.3d 1, ¶ 30. However, we have also advised claimants "not to come to this Court with claims of oppression or unconscionability unless the record in regard to these issues has been adequately developed." *Kloss*, ¶ 31. Here, there is no record on unconscionability, which is not surprising—the Martzes simply did not make such arguments in the District Court.

¶23 We note that the District Court, without mention of unconscionability, briefly discussed two of this Court's seminal cases on unconscionability, *Iwen* and *Kloss*, in its order. However, that brief discussion was directed to contracts of adhesion and reasonable expectations, and the District Court did not mention unconscionability of the arbitration clause at all, which, given the Martzes' arguments, was not surprising. The District Court characterized the Martzes' argument as follows: "[the Martzes'] main argument is that the underlying loan agreements are void as a matter of law, and therefore, the arbitration provision which was incorporated into the last loan, is void as well." Upon that characterization, the District Court proceeded to order arbitration—it was bound by federal law to do so under the circumstances—and further, concluded that

11

"[t]he plaintiffs have not shown that if the underlying contract is alleged to be void, they can then avoid arbitration pursuant to the arbitration clause."

¶24     The unfortunate fact of this case is that it was not until after the District Court's order compelling arbitration that the Martzes asserted that the arbitration clause itself was unconscionable.  Complicating things further, the Martzes accomplished this challenge in a motion for reconsideration in the District Court.  As we have said previously, a motion for reconsideration is not a motion authorized by the Montana Rules of Civil Procedure, and furthermore, often presents "a procedural trap for the unwary and a grave risk that an otherwise meritorious appeal will be dismissed . . . ." *Nelson v. Driscoll* (1997), 285 Mont. 355, 359-60, 948 P.2d 256, 258-59.  While this Court will, at times, construe a motion for reconsideration as a Rule 59 motion to alter or amend a judgment, *Nelson*, 285 Mont. at 360, 948 P.2d at 259, we will not do so where the motion presents the case under new theories.  *Nelson*, 285 Mont. at 360-61, 948 P.2d at 259.  As a result, where, as here, new theories are argued under the auspices of a motion for reconsideration and ignored by the district court, we will not construe them as properly pled before the district court.

¶25     As we have previously stated, "[i]t is well established that this Court will not review an issue that was not raised in the district court.  'It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.'"  *Paulson v. Flathead Conservation District*, 2004 MT 136, ¶ 37, 321 Mont. 364, ¶ 37, 91 P.3d 569, ¶ 37.  That is the situation before us today.  As a

12

result, we hold that the issue is not properly before us, and therefore, we cannot undertake its review.

## CONCLUSION

¶26    The Martzes' complaint alleged that the series of loan contracts made with Beneficial were void as a matter of state law.  After *Buckeye Check Cashing*, this is a question which is appropriately heard by an arbitrator where, as here, the underlying contract includes an arbitration provision.  Consequently, the District Court's order compelling arbitration is affirmed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER


Justice James C. Nelson specially concurs.

¶27    Albeit very reluctantly, I concur in our Opinion.  To say that my concurrence is without enthusiasm, however, (see ¶ 18 of the Court's Opinion) grossly overstates my exuberance for our decision.  Unfortunately, our ability to come to any other conclusion is cabined by the United States Supreme Court's recent decision in *Buckeye Check Cashing, Inc. v. Cardegna* (2006), 546 U.S. ___, 126 S.Ct. 1204, 163 L.Ed.2d 1038, and the procedural quirk in the Martzes' own pleadings.

13

¶28    My frustration with our inability to reach a legally correct, fair and just result in this case stems directly from the fact that the United States Supreme Court has, from the beginning, improperly conflated the Federal Arbitration Act (FAA) into something which Congress never intended it to be. *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995), 513 U.S. 265, 283, 115 S.Ct. 834, 844, 130 L.Ed.2d 753 (O'Connor, J., concurring) ("I continue to believe that Congress never intended the Federal Arbitration Act to apply in state courts, and that this Court has strayed far afield in giving the Act so broad a compass."). *See also Buckeye,* 546 U.S. at ___,  126 S.Ct. at 1211 (Thomas, J., dissenting), and *Kloss v. Edward D. Jones & Co.,*  2002 MT 129, ¶ 61 n.3, 310 Mont 123, ¶ 61 n.3, 54 P.3d 1, ¶ 61 n.3 (Nelson, J., concurring).

¶29    Indeed, under the High Court's jurisprudence, the FAA and pre-dispute arbitration clauses in contracts of adhesion have now become little more than instruments of economic Darwinism by which predatory lenders—such as Beneficial and Buckeye—and other large corporations victimize main-street businesses, the unsophisticated, the elderly, the poor, and what is left of the middle class.

¶30    I concur only because a higher authority than this Court has declared the law of the land on these issues.

/S/ JAMES C. NELSON

14

Justice Patricia O. Cotter dissents.

¶31    I dissent.  Contrary to the decision reached by this Court as to Issue Two, I would conclude that the conscionability of the arbitration rider was sufficiently presented to and aired by the District Court so as to permit our consideration of the question of whether the arbitration clause was unconscionable.  I would reach that issue on the merits, and reverse the District Court's Order compelling arbitration.

¶32    As the Court points out at ¶ 10, we review a district court's order granting a motion to compel arbitration *de novo*.  This means, presumably, that we review the entirety of the District Court's Order.  In concluding that the Plaintiffs did not sufficiently preserve for our review the issue of the arbitration clause's unconscionability, the Court ignores, or at the least misconstrues, much of the District Court's analysis.  While the District Court did refer to "the plaintiffs main argument" in its Order Granting Defendants' Motion to Compel Arbitration, the court preceded this reference with the following two sentences:

> The plaintiffs state that a written arbitration [sic] cannot be compelled unless there is a valid and enforceable contractual agreement to arbitrate.  9 U.S.C. § 2.  They point out that generally applicable contract defenses such as fraud, duress, and unconscionability may be applied to invalidate arbitration agreements without contravening § 2 of the FAA.

Then, after citing the Plaintiffs' "main argument," the court went on to say that "[t]he plaintiffs argue that under *Kloss* and *Iwen* (citations omitted), the arbitration rider is unenforceable at law and, therefore, the Court may not grant the defendants' motion to compel."

15

¶33 Against the foregoing backdrop, the District Court went on to address what it saw as the distinctions between this case on the one hand, and *Kloss* and *Iwen* on the other. The court concluded that the arbitration clause here did not take advantage of any party, nor did it place either party in a superior bargaining position. Based upon this analysis and the fact that the Plaintiffs signed an arbitration rider of which they were personally aware, the court granted the Defendant's motion to compel arbitration.

¶34 When we review a matter *de novo*, our task is to review the correctness of the district court's decision. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶¶ 3-4, 327 Mont. 99, ¶¶ 3-4, 113 P.3d 275, ¶¶ 3-4. While we generally refuse to consider on appeal matters that are not properly raised by the parties' pleadings, we usually do address those matters which the district court considered in entering its decision. Here, the District Court obviously entertained arguments regarding the conscionability of the arbitration rider and factored those arguments into its decision that the arbitration clause did not take unfair advantage of the Plaintiffs or place Beneficial in a superior bargaining position. The District Court concluded there was *an enforceable conscionable agreement to arbitrate*. It is the correctness of this conclusion, supported by the District Court's attempt to distinguish this case from *Kloss* and *Iwen,* that we should be reviewing here. Instead, the Court concludes that the determination at the heart of the District Court's Order compelling arbitration was not preserved for appeal. I am at a loss to understand why we should refuse to reach the very issues the District Court considered dispositive in concluding that the arbitration order was conscionable.

16

¶35 I would address the court's resolution of the question of whether the arbitration rider was enforceable. Because, as this Court concedes at ¶ 21, the conscionability of an arbitration clause is a matter to be adjudicated by a court, I would not consider *Buckeye Check Cashing*. I would squarely reject the District Court's logic and legal analysis relative to the enforceability of the arbitration rider, and reverse the court's order compelling arbitration. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice Brian Morris joins in the dissent of Justice Patricia O. Cotter.

/S/ BRIAN MORRIS