No. DA 06-0214

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 132

_____

JOLENE SHELTON,

       Plaintiff and Appellant,

   v.

STATE FARM MUTUAL AUTOMOBILE INS. CO.,

       Defendant and Respondent.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and for the County of Missoula, Cause No. DV-99-87979,
                     The Honorable John S. Henson, Presiding Judge.


COUNSEL OF RECORD:

       For Appellant:

          Rex Palmer, Attorney at Law, Missoula, Montana

       For Respondent:

          Bradley J. Luck and Kathleen L. DeSoto, Garlington, Lohn & Robinson,
          Missoula, Montana

_____

Submitted on Briefs:  April 18, 2007

Decided:  June 5, 2007

Filed:

_____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Jolene Shelton (Shelton) appeals from the order of the Fourth Judicial District Court, Missoula County, granting State Farm Mutual Automobile Insurance Company's (State Farm) motion for summary judgment and denying Shelton's motion to compel discovery.  We reverse and remand.

¶2      We review whether the District Court erred in granting State Farm's motion for summary judgment?

## FACTUAL AND PROCEDURAL HISTORY

¶3      Shelton and her husband, Kenneth Shelton, were injured in an automobile accident in Missoula in early April of 1995.  Tim Hazelbaker (Hazelbaker) "rear-ended" their car with his pickup.  Hazelbaker conceded liability, and his insurer paid $25,000.00 each to Shelton and her husband in August of 1996.

¶4      Shelton and her husband also made claims on several State Farm policies under which they were insured for medical payments and underinsured motorist (UIM) coverage.  Shelton's husband settled his UIM claim for $60,000.00 in April of 1998. Shelton and State Farm would not settle her UIM claim for another three years.

¶5      Shelton first offered to settle her UIM claim with State Farm in May of 1998 for $90,000.00 in excess of advances that she already had received for her medical costs. Her offer exceeded what State Farm thought she was entitled under her UIM coverage. State Farm hired Attorney Terry J. MacDonald (MacDonald) to "evaluate the claim process to date and handle future negotiations with Mrs. Shelton."  State Farm rejected Shelton's settlement offer after consulting with MacDonald.  State Farm chose instead to

2

"proceed with additional discovery in the claim."

¶6 Shelton filed a complaint against State Farm on April 29, 1999, seeking to recover UIM benefits in an amount equal to the special and general damages that she had sustained in the accident. The parties attempted unsuccessfully to mediate Shelton's claim in "early summer of 1999."

¶7 Shelton amended her complaint on August 13, 1999, to add claims for punitive damages and bad faith. Shelton alleged in her bad faith claim that State Farm had violated two provisions of the Montana Unfair Trade Practices Act (MUTPA) when it (1) refused to pay her claims without conducting a reasonable investigation as required by § 33-18-201(4), MCA, and (2) neglected to attempt in good faith to effectuate a prompt, fair, and equitable settlement of her claim even though liability had become reasonably clear, as required by § 33-18-201(6), MCA.

¶8 Shelton sent her "First Discovery Requests" regarding her MUTPA, UIM coverage, and punitive damages claims to State Farm in August of 1999. State Farm responded on August 16, 1999, with an "Offer of Judgment," pursuant to M. R. Civ. P. 68. State Farm's offer stated that it would allow "judgment to be taken against it on all of the claims" if Shelton would accept a payment of $57,038.28. Shelton refused State Farm's offer. State Farm then sent her a check on September 8, 1999, for $57,038.28 with no demand that she release State Farm from liability.

¶9 The parties stipulated to bifurcate Shelton's UIM coverage claim from her punitive damages and MUTPA claims. They also agreed to hold in abeyance Shelton's discovery requests on her punitive damages and MUTPA claims pending a resolution of

3

Shelton's UIM claim. The parties settled the UIM claim on May 7, 2001, for $23,000.00 in addition to what State Farm already had paid.

¶10    Thereafter Shelton and State Farm engaged in a protracted discovery dispute regarding Shelton's MUTPA and punitive damages claims. State Farm stated in its response to Shelton's discovery requests that it "objected to providing information it considered confidential, proprietary business materials, and suggested the parties agree to a protective order which would allow [Shelton] to use the materials while maintaining the confidential nature of the documents." Shelton argues that she "declined to stipulate to what she saw as an unwarranted protective order." Shelton points out that State Farm admitted that it had the materials that she requested and State Farm never moved for a protective order.

¶11    State Farm filed an answer to Shelton's amended complaint on March 11, 2002. It asserted, pursuant to § 33-18-242(5), MCA, that "[a]n insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." State Farm then filed a motion for summary judgment on March 12, 2004, regarding Shelton's MUTPA and punitive damages claims. Shelton filed a motion to compel on October 25, 2004, for various interrogatories and requests for production of documents to which, she claimed, State Farm had responded only "fractionally."

¶12    The court held a hearing regarding both motions on July 5, 2005. The court adopted State Farm's proposed twenty-seven-page order "*in toto*" on January 23, 2006, granting State Farm's motion for summary judgment as to all Shelton's claims and

4

denying Shelton's motion to compel discovery. The court's order stated, with respect to Shelton's MUTPA claims, that she had "not met her burden to come forward with proper verification of the existence of any material fact which would preclude granting State Farm's motion." It noted with respect to her punitive damages claims that "Shelton[] admitted that [she] had no factual basis for a claim of actual malice, and there is absolutely no evidence of any fraudulent behavior of any type by State Farm . . . ." The court also denied her motion to compel discovery. It determined that Shelton's "[m]otion is more accurately described as a Rule 56(f) motion . . . . to hold a summary judgment motion in abeyance because she cannot overcome summary judgment without conducting further discovery." The court concluded that "[n]one of the documentation sought by [Shelton] through her Motion to Compel would preclude entry of summary judgment, and so it is not well-taken." Shelton appeals.

## STANDARD OF REVIEW

¶13 We review *de novo* a district court's decision to grant summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶ 7, 326 Mont. 236, ¶ 7, 108 P.3d 507, ¶ 7. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16.

5

**DISCUSSION**

¶14 *Did the district court err in granting State Farm's motion for summary judgment?*

¶15 Shelton argues first that she has established a genuine issue of material fact as to whether State Farm conducted a "reasonable investigation" pursuant to § 33-18-201(4), MCA. She points out that her answers to State Farm's interrogatories provide that (1) State Farm failed to collect several years of Shelton's pre-injury medical records, even though State Farm admitted that it reasonably needed these records in order to investigate her claim properly; (2) State Farm failed to pursue reports from a medical doctor and a physicist until 1999, even though State Farm admitted that it reasonably would require these reports in order to evaluate Shelton's claim; and (3) State Farm "tainted the physics aspect of its investigation" when it "delayed providing its own doctor's findings and conclusions" to the physicist that State Farm hired to testify about the cause of Shelton's injuries.

¶16 State Farm argues that Shelton has failed to establish any issue of fact as to whether there was a "reasonable investigation" in light of the fact that (1) Shelton admitted in a deposition that she was "unclear on what investigations she believes State Farm should have undertaken;" and (2) State Farm's outside counsel stated that he found State Farm's investigation to be "thorough and appropriate."

¶17 Shelton's inability to advise State Farm on its claims handling practices does not change the fact that she has offered evidence tending to show that State Farm failed to collect records and reports and failed to share important information among its own experts. MacDonald's contrary assertions that the investigation was "thorough and

6

appropriate" tend to establish only that he disagrees with Shelton. Moreover, State Farm confirms Shelton's evidence—to some extent—when it admits that there was a "delay (of a few weeks)" in the seeking of her medical records. State Farm has failed to establish an absence of genuine issues of material fact as to whether State Farm "reasonably investigated" her claim pursuant to § 33-18-201(4), MCA. M. R. Civ. P. 56(c).

¶18 Shelton argues next that she has created an issue of fact with regard to whether State Farm neglected "to attempt in good faith to effectuate [a] prompt, fair, and equitable settlement[] of claims in which liability has become reasonably clear," pursuant to § 33-18-201(6), MCA. She contends that her evidence that State Farm failed to perform a "reasonable investigation," as described above at ¶ 15, also tends to establish that State Farm acted in bad faith during the settlement negotiations. She also offers evidence that State Farm neglected for years to offer even the bottom end of its own evaluation range.

¶19 Shelton admits that she was unwilling to settle before the spring of 1998 in light of her pending shoulder surgery, but claims that State Farm failed to make a good faith effort thereafter. She states in her interrogatory that "[a]lthough [State Farm's] claims adjuster requested $72,500 of settlement authority [sometime near May of 1998], [State Farm's] claims manager in charge of the claims adjuster authorized only $40,000 of settlement authority." Shelton also asserts that State Farm "withheld important medical information from [her] . . . ." She states in her interrogatory that State Farm failed to forward to her a "letter dated December 12, 1997 from [her] physical therapist . . . [opining] that [Shelton] had [a] permanent disability."

¶20 State Farm offers some conflicting evidence, but fails to establish the absence of a

7

genuine issue as to any material fact regarding Shelton's claim under § 33-18-201(6), MCA. State Farm instead attacks Shelton's proffered evidence as being based almost exclusively on her own answers to State Farm's interrogatories. State Farm's argument lacks merit as M. R. Civ. P. 56(c) specifically provides for the court's use of "answers to interrogatories" when considering a motion for summary judgment. Shelton's reliance on her own answers to State Farm's interrogatory is no less valid than State Farm's reliance on the affidavits that it submitted from its own attorney and claims adjusters. *See* M. R. Civ. P. 56(c).

¶21 State Farm also argues that "virtually all of the concerns raised by Shelton in regard to the claim handling occurred during the litigation of the underlying matter." It cites *Palmer by Diacon v. Farmers Ins.*, 261 Mont. 91, 121-22, 861 P.2d 895, 914-15 (1993), for the proposition that an insurer's litigation conduct should not be considered as evidence of bad faith. State Farm overstates this Court's holding in *Palmer*.

¶22 This Court in *Palmer* reversed a trial court's decision to allow evidence of an insurer's litigation conduct from a trial on whether the insurer had breached the covenant of good faith and fair dealing. *Palmer*, 261 Mont. at 125, 861 P.2d at 916. The Court determined that the prejudicial nature of the insurer's litigation conduct outweighed its relevance at a trial. *Palmer*, 261 Mont. at 124, 861 P.2d at 916. This Court specifically noted that "we do not impose a blanket prohibition" on an insurer's post-filing conduct. *Palmer*, 261 Mont. at 123, 861 P.2d at 915. The Court held that the correct approach would be to weigh the prejudicial effect of such evidence against its probative value pursuant to M. R. Evid. 403. *Palmer*, 261 Mont. at 123, 861 P.2d at 915.

¶23 Moreover, Shelton did not file suit against State Farm until April of 1999, approximately one year after her first demand for settlement. State Farm's conduct within this period would be admissible even under State Farm's broad interpretation of this Court's holding in *Palmer*. State Farm fails to establish an absence of a genuine issue as to whether it made a "good faith" attempt at a settlement with Shelton during the three years between Shelton's first demand for settlement in May of 1998 and the parties' final settlement of Shelton's UIM claims in May of 2001. M. R. Civ. P. 56(c).

¶24 Shelton contests finally the court's determination that no genuine issues of material fact exist with respect to whether "any State Farm employee or agent acted with actual malice in the handling of Shelton's claim." Shelton's claim of actual malice requires her to offer evidence tending to show that State Farm had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Shelton. Section 27-1-221(2), MCA. She offers evidence that State Farm knew "for years [that] it held funds rightly belonging to Shelton." Shelton points out that she had a high probability of injury in light of the fact that § 27-1-106, MCA, defines an "injury to property" as "depriving its owner of the benefit of it, which is done by . . . withholding . . . it . . . ." She also must offer facts tending to show that State Farm proceeded with conscious, intentional disregard, or indifference to a high probability of injury to Shelton. Section 27-1-221(2), MCA. She recounts in her interrogatory that State Farm refused to pay her UIM benefits less than or equal to the minimum amount that State Farm's internal evaluations showed that she deserved.

¶25 State Farm responds that Shelton has admitted that State Farm acted without

malice. It points to statements in her deposition testimony where it alleges that Shelton admits that she and State Farm had an "honest disagreement on the value of [her] personal injury case." State Farm also points to Shelton's testimony where it alleges she failed to "articulate any reason for her claims." State Farm asked Shelton, for example, if she thought that "anyone working for or on behalf of State Farm set out purposely to hurt you or recklessly to cause you damage, or was this an honest disagreement?" Shelton responded: "I don't know. I would hope they wouldn't."

¶26 Shelton's alleged admission that she and State Farm had an "honest disagreement" on the total value of the settlement fails to show that she offered no genuine issue of fact as to whether State Farm acted with malice. An issue could exist as to whether State Farm acted with malice in failing to pay Shelton the minimum amount of money it had determined that she deserved, even if State Farm could prove that the parties "honestly disagreed" over the total value of the settlement. State Farm's remaining citations to her deposition testimony represent either unresponsive or irrelevant answers to the issue of whether State Farm acted with actual malice.

¶27 The District Court also determined that Shelton had failed to establish an issue of fact with respect to State Farm's affirmative defense under the MUTPA that it had a reasonable basis for contesting the value of her claim. Section 33-18-242(5), MCA, provides that "[a]n insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." The record indicates, however, as we discussed above at ¶ 26, that Shelton has offered interrogatory answers tending to show that State Farm had no

10

reasonable basis for refusing to pay "even the bottom end of its own under-evaluation." State Farm makes no showing that this issue of fact is either absent or irrelevant to its defense.

¶28 We conclude that the District Court erred in determining that Shelton has failed to present genuine issues of material fact with respect to her MUTPA and punitive damages claims. Our decision on the court's summary judgment motion renders our consideration of Shelton's motion to compel unnecessary in light of the fact that the court analyzed her motion to compel discovery as an M. R. Civ. P. 56(f) motion to postpone summary judgment so that Shelton could seek discovery on "facts essential to justify [her] opposition . . ." to summary judgment. Shelton no longer needs to postpone summary judgment. The court should reconsider her motion on remand as a motion to compel discovery pursuant to M. R. Civ. P. 37.

¶29 We REVERSE the District Court's order for summary judgment and REMAND for proceedings consistent with this opinion.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

11