DA 06-0802

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 270

DEBRA LARSEN,

        Plaintiff and Appellant,

   v.

WESTERN STATES INSURANCE AGENCY, INC.,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 06-0056
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Tom Singer, Axilon Law Group, Billings, Montana

        For Appellee:

        Jared S. Dahle and Randall G. Nelson, Nelson & Dahle, Billings, Montana

Submitted on Briefs:  September 19, 2007

Decided:  October 22, 2007

Filed:

_____
               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Debra Larsen (Larsen) appeals from an order of the Thirteenth Judicial District, Yellowstone County, granting Western States Insurance Agency, Inc.'s (Western) motion for summary judgment. We affirm in part and reverse and remand in part.

¶2 Larsen presents the following issues for review:

¶3 Whether the District Court properly determined that the employment agreement between Larsen and Western contained a valid arbitration clause.

¶4 Whether the District Court properly determined that the employment agreement contained a valid non-competition clause.

¶5 Whether the District Court properly determined that the employment agreement was enforceable as a whole.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 Western hired Larsen as a "personal lines" insurance agent in May, 2000. Western supplied Larsen with an existing book of business when she began work. The book of business consisted of clients who already owned Western insurance policies. Western required Larsen to sign a non-negotiable Producer's Employment Agreement (Agreement) upon hiring. The Agreement had a one-year term and governed all employment matters, including matters post-employment if the employee resigned or was terminated. The Agreement's first page stated in bold, capital letters: "THIS AGREEMENT IS SUBJECT TO ARBITRATION." Western required Larsen to re-sign the Agreement in March of each succeeding year of her employment.

2

¶7     The Agreement limited Larsen's post-employment rights regarding her Western book of business. The Agreement included a non-competition clause and a liquidated damages clause. The non-competition clause prohibited Larsen from accepting business after terminating her employment relationship with Western from clients included in Larsen's Western book of business. The liquidated damages clause imposed a penalty on Larsen equivalent to two-hundred percent of the annual commission for each violation.

¶8     Larsen resigned from Western on July 13, 2005, to start her own insurance agency. Western informed Larsen of its intention to enforce the terms of the Agreement's non-competition and liquidated damages clauses shortly after she left. Western referred its clients covered by the non-competition clause to Larsen, however, when Western lacked the resources to serve those clients. Larsen objected to the fact that Western could enjoy a short-term increase in profits by referring clients to Larsen while enforcing the liquidated damages clause against her. Larsen pointed out that Western could receive twice the value of the annual commission for each policy covered by the non-competition clause without expending any time or resources.

¶9     Larsen commenced this declaratory judgment action against Western on January 18, 2006. Larsen claimed that the entire Agreement amounted to an unconscionable contract of adhesion. As a result, she argued that Western could not enforce the arbitration clause. Larsen also claimed that the non-competition clause and the liquidated damages clause represented unreasonable restrictions on trade and therefore the court should void them as against public policy.

3

¶10    Western moved for summary judgment. The District Court determined that the terms of the Agreement, particularly the arbitration clause, fell within Larsen's reasonable expectation. The District Court concluded that the non-competition and liquidated damages clauses satisfied the three-part test articulated in *Montana Mountain Products v. Curl*, 2005 MT 102, ¶ 11, 327 Mont. 7, ¶ 11, 112 P.3d 979, ¶ 11. The court noted that the Agreement restricted application of the clauses in time and space and that good consideration supported them. The court further determined the clauses to be reasonable based on Larsen's status as an insurance industry veteran who easily could comprehend their effect. Larsen appeals.

## STANDARD OF REVIEW

¶11    We review *de novo* a district court's decision to grant summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Shelton v. State Farm Mut. Auto Ins. Co.*, 2007 MT 132, ¶ 13, 337 Mont. 378, ¶ 13, 160 P.3d 531, ¶ 13. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable interferences in favor of the party opposing summary judgment. *Shelton*, ¶ 13.

## DISCUSSION

¶12    *Whether the District Court properly determined that the employment agreement between Larsen and Western contained a valid arbitration clause.*

¶13    Larsen relies solely on our decision in *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, 310 Mont. 123, 54 P.3d 1, to challenge the arbitration clause's validity. Larsen points

to the following factors to argue that the clause fell outside her reasonable expectation: (1) the Agreement was standardized, (2) the party with superior bargaining power prepared the Agreement, (3) Larsen did not have the opportunity to negotiate the Agreement's terms, and (4) Western did not explain the Agreement to her. *Kloss*, ¶¶ 27-28. Larsen also argues that the pervasive nature of arbitration clauses in insurance employment agreements rendered the Agreement unreasonable. Larsen claims that her refusal to accept the arbitration clause would have shut her out of the industry. *Kloss*, ¶ 27.

¶14 *Kloss* first requires us to determine whether the contract as a whole represents a contract of adhesion. *Kloss*, ¶ 23 (citing *Iwen v. U.S.*, 1999 MT 63, 293 Mont. 512, 977 P.2d 989). A standardized form of agreement, drafted by the party with superior bargaining power, and without offering the weaker party the opportunity to negotiate its terms, constitutes a contract of adhesion. *Kloss*, ¶¶ 23-24. We determined that the securities agreement at issue in *Kloss* was adhesive. The superior party had prepared the standardized investment agreement, the weaker party had no opportunity to negotiate, and the superior party did not explain the consequences of the arbitration clause to the weaker party. *Kloss*, ¶¶ 27-28. No one in the present case disputes that the Agreement was a standardized agreement, prepared by the superior party, that the weaker party had no opportunity to negotiate its terms, and the superior party did not explain it to the weaker party. The agreement between Larsen and Western qualifies as a contract of adhesion. *Kloss*, ¶¶ 27-28.

¶15 As the District Court correctly noted, however, simply being adhesive does not render a contract invalid and unenforceable under the *Kloss* analysis. *Kloss*, ¶ 24. The contract also either must fall outside the weaker party's reasonable expectation or must be unconscionable.

5

*Kloss*, ¶ 24. Larsen's challenge to the Agreement focuses exclusively on her reasonable expectation. Larsen argues that, like the plaintiff in *Kloss*, Western forced her into a contract of adhesion without the reasonable expectation that it would subject her to arbitration. Larsen asserts that the District Court erroneously concluded that the Agreement fell within her reasonable expectation.

¶16    The District Court noted that Larsen had signed similar agreements in her long experience in the insurance industry, and that the arbitration clause was "so boldly stated in large font on the first page" of the Agreement. Larsen correctly argues that it is inappropriate to consider the express written arbitration clause alone as evidence that the weaker party expected to arbitrate any disputes. *Kloss*, ¶ 29. We agree that the written term alone is insufficient to establish the weaker party's reasonable expectation. In this case, however, the District Court based its conclusion on several additional factors.

¶17    The District Court considered Larsen's twenty years experience in the insurance industry. It considered the fact that Larsen had entered various, similar employment agreements that contained arbitration clauses at Western and at other insurance agencies over her years in the insurance industry. The District Court also considered that the Agreement stated in bold, capital letters on the first page that "THIS AGREEMENT IS SUBJECT TO ARBITRATION." We hold that this factual analysis constitutes sufficient grounds to support the District Court's conclusion that the arbitration clause fell within Larsen's reasonable expectation.

¶18    Larsen argues that the concurring opinion in *Kloss* required the District Court to consider whether Larsen voluntarily, knowingly, and intelligently waived her right to redress

6

before court and jury. *Kloss*, ¶ 64 (Nelson, J. concurring). Larsen contends that factors such as whether the parties negotiated a term, whether disparity in bargaining power existed, whether counsel represented the parties, and whether the parties actually signed or initialed the agreement, among others, are relevant to whether a party has waived its fundamental rights to trial by jury or right to access the courts. *Kloss*, ¶ 65 (Nelson, J. concurring).

¶19 The adhesion, reasonable expectation, and unconscionability prongs of the *Kloss* analysis, however, weave together, either expressly or impliedly, all of these factors. *Kloss*, ¶¶ 23-32. Larsen mistakenly reads the concurring opinion in *Kloss* as creating law independent from *Kloss*. The concurring opinion served primarily to further explicate the rationale that animates the principal holding and analysis in *Kloss*. *Kloss*, ¶ 48 (Nelson, J. concurring). We did not recognize an independent analysis of the enforceability of arbitration clauses in the concurring opinion in *Kloss*. The District Court correctly determined that the arbitration clause in the Agreement was valid and enforceable.

¶20 *Whether the District Court properly determined that the employment agreement contained a valid non-competition clause.*

¶21 *Whether the District Court properly determined that the employment agreement was enforceable as a whole.*

¶22 We address together Larsen's arguments regarding the validity of the non-competition clause and the enforceability of the Agreement as a whole. In *Martz v. Beneficial Montana, Inc.*, 2006 MT 94, ¶ 11, 332 Mont. 93, ¶ 11, 135 P.3d 790, ¶ 11, we considered "whether a court or an arbitrator decides the question of a contract's validity where the contract contains an arbitration provision."

7

¶23     We adopted two relevant arbitration principles from the U.S. Supreme Court's decision in *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204 (2006). First, a court must sever an arbitration clause from a contract as a whole. *Martz*, ¶ 15 (citing *Buckeye*, 546 U.S. at 445, 126 S. Ct. at 1209).   Second, "'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator'" if the contract contains a valid arbitration clause. *Martz*, ¶ 15 (quoting *Buckeye*, 546 U.S. at 445-46, 126 S. Ct. at 1209).

¶24     In light of *Martz*, the District Court properly heard and determined the validity of the arbitration clause in the Agreement.   Once the District Court determined the arbitration clause's validity, however, it exceeded its authority when it decided further substantive issues under the Agreement.   Those issues properly should be decided by an arbitrator according to the terms of the Agreement. *Martz*, ¶ 15.   We vacate the District Court's decision as to the validity of the non-competition and liquidated damages clauses and remand for arbitration.

¶25     Affirmed in part, reversed and remanded in part.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

8