JUSTICE RICE,
dissenting.
¶38 “This case serves as a reminder that people should read their mail-especially when it comes from their credit card companies.” Hutcherson v. Sears Roebuck & Co., 793 N.E.2d 886, 887 (Ill. App. 2003).
*486 ¶39 Indeed. It is very common in today’s world for credit card companies to make changes to agreements with their customers, sending out notices of such changes with the customers’ monthly bills. This is done pursuant to the specific authority granted to the companies to do so under the original agreement, as was granted here. Kortum-Managhan consented to this unilateral process of contract modification when she agreed to the original terms of the credit agreement, which granted Herbergers permission, “at any time,” to “change any term of [the] agreement” and provide notice of any changes.[1] The original agreement further provided that Kortum-Managhan, by her continued use of the card, would accept the new terms. Kortum-Managhan admits that she received the original Revolving Credit Agreement via mail, that the terms of the agreement permitted Herbergers to unilaterally modify their agreement and notify her of the changes in the same manner as it did originally, via mail, and that she used the card pursuant to this agreement.
¶40 It is well established that a person who signs a contract is presumed to know its terms and agree to be bound by them. Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts 27, § 70:113 (4th ed., West 2003). It follows that Kortum-Managhan had a duty to read the notices Herbergers mailed to her regarding alterations to her contract, just as she had a duty to read the contract’s original terms, or risk the consequences created by her failure to do so.
¶41 Over twenty-five years ago, our decision in Shimsky cautioned customers of the potential consequences of failing to read correspondence from their creditor. 208 Mont. 186, 676 P.2d 1308. Approximately six months after Shimsky took out a loan and entered into an open ended revolving credit plan with Valley Credit Union, Valley changed the terms of the credit agreement. Valley mailed Shimsky a notice of the change, which was an increase in his finance rate. Thereafter, Shimsky continued to make payments to Valley, but later asserted he did not realize the finance rate had been changed. Shimsky brought suit, claiming Valley had breached its agreement by unilaterally raising the interest rate. We decided the case upon principles of equity, concluding that, because Shimsky had continued to make payments and otherwise remain compliant with the terms of the modified agreement without objection to the changes, Valley had *487 relied upon Shimsky’s apparent acquiescence and it would be inequitable to allow Shimsky to pursue his claim. Shimsky, 208 Mont. at 192, 676 P.2d at 1311. Shimsky’s failure to read his mail, coupled with his prolonged silence and compliance, bound him to the change in contract terms the creditor had made.
¶42 Kortum-Managhan criticizes the notice regarding the arbitration clause because Herbergers mailed it with “copious piles of junk mail,” such as “Paris Hilton endorsed products.” However, when Kortum-Managhan became part of an agreement under which Herbergers could unilaterally make changes and send notice of those changes, that contractual authority was not qualified by a requirement that notices be sent in a separate envelope. Clearly, Kortum-Managhan should not be able to escape her duty to read legal notices by way of her assertion that “she routinely throws away the junk mail without reading it.”
¶43 The Court devotes much of its opinion applying ideas presented in Justice Nelson’s concurring opinion in Kloss. However, we previously explained that this concurrence did not create law independent from the Court’s holding in Kloss. Larsen v. Western States Ins. Agency, Inc., 2007 MT 270, ¶ 19, 339 Mont. 407, 170 P.3d 956 (“We did not recognize an independent separate analysis of arbitration clauses in the concurring opinion in Kloss.”).
¶44 The Court discounts the six cases cited by Herbergers, wherein courts have upheld a company’s unilateral change in contract terms, by reasoning that, in these cases, the courts found the customer had received notice of the changes to their respective contracts. Opinion, ¶¶ 33-34. However, the Court’s attempt to distinguish these cases runs counter to the District Court’s determination that Kortum-Managhan had received notice. The District Court in this case heard evidence that Herbergers sent a notice of the change to Kortum-Managhan, and despite Kortum-Managhan’s assertion that she “may” have discarded the notice, the court ultimately found she had received it.
¶45 While Article II, Section 26 of the Montana Constitution provides a right to a jury trial, every individual enjoys the fundamental freedom to contract, which allows parties to craft terms governing their private conduct. Arrowhead Sch. Dist. No. 75 v. Klyap 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250; see also Gibbons v. Huntsinger, 105 Mont. 562, 573, 74 P.2d 443, 449 (1937) (“[flreedom of contract is one of the fundamental liberties of the individual”). Parties are free to contractually waive individual rights as they deem appropriate. A court may not re-write the terms of a contract, but must enforce the contract as the parties intended. Stutzman v. Safeco Ins. Co. of America, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997).
*488 ¶46 Further, arbitration clauses in contracts are valid even in contracts of adhesion, if the clause is within the reasonable expectation of the weaker party and is not unduly oppressive, unconscionable, or against public policy. Iwen v. U.S. West Direct, 1999 MT 63, ¶ 27, 293 Mont. 512, 977 P.2d 989 (quoting Passage v. Prudential-Bache Securities, Inc. 223 Mont. 60, 66, 727 P.2d 1298, 1302 (1986)). If it was objectively reasonable to expect a change to the agreement which would add an arbitration requirement, then Kortum-Managhan’s continued use of the card after having been provided notice of that change establishes her assent to the new term, provided the term was not oppressive, unconscionable, or contrary to public policy. However, Kortum-Managhan has not asserted that the change to the contract requiring arbitration was not within her reasonable expectations when she agreed that changes could be made unilaterally, nor that the term was oppressive or unconscionable. As the District Court noted, “Plaintiff has presented no evidence that an arbitration provision was not within the reasonable expectations of the Plaintiff or that the provision to arbitrate is unduly oppressive, unconscionable, or against public policy.” (Emphasis added.)
¶47 Thus, Kortum-Managhan entered an agreement with Herbergers which included a unilateral change-and-notify procedure, Herbergers acted according to this provision and added an arbitration clause, Kortum-Managhan failed to read the subsequent notice, and thereafter continued to accept the benefits of the parties’ agreement by using the card. She did not establish in the District Court that this contract change was beyond her expectations or unconscionable. Rather, she asks the Court to ignore her entering an agreement that included a change-and-notify procedure, excuse her discarding of what, in her opinion, was “junk mail” from the company, and undertake review of waiver analysis in a vacuum. Because I believe the contract terms cannot be ignored, nor Kortum-Managhan’s conduct excused, and because she did not present evidence to support “reasonable expectation” and “unconscionable” defenses, I would affirm the District Court.