DA 09-0489

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 164

MATTHEW SUMMERS and HEIDI AMES,

      Plaintiffs and Appellants,

  v.

CRESTVIEW APARTMENTS, LH RESIDENTIAL, LLC,
and SCOTT HACKER,

      Defendants, Appellees, and Cross-Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DV 07-317<br>Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

          Michael Sol (argued); Sol & Wolfe Law Firm, Missoula, Montana

      For Appellees:

          Ted Hess-Homeier (argued); Hess-Homeier Law Office, Missoula,
          Montana

              Argued: April 9, 2010
          Submitted: April 13, 2010
            Decided: July 27, 2010

Filed:

        _____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Tenants Matthew Summers and Heidi Ames (collectively Summers) appeals from findings of fact, conclusions of law, and judgment of the Fourth Judicial District Court, Missoula County, awarding landlord Crestview Apartments (Crestview) recovery of $9,442.36 with interest and costs.  We reverse.

¶2      Summers presents multiple issues on appeal, primarily asserting violations of the Residential Tenants' Security Deposits Act (Security Deposits Act) and the Montana Residential Landlord and Tenant Act of 1977 (Landlord and Tenant Act).  In particular, Summers claims that Crestview illegally deducted future unpaid rent from the security deposit, wrongfully imposed accelerated rent upon breach of the lease, impermissibly required that tenants would be obligated to pay attorney fees in any dispute, failed to properly mitigate damages, and utilized misleading language in the written lease agreement.  Summers also challenged Crestview's imposition of collection costs and claimed that Crestview misrepresented consumers' rights in violation of the Consumer Protection Act.  Crestview cross-appeals the District Court ruling that limited its attorney fees award to $500.

¶3      We restate the issues, finding the following issues dispositive:

¶4      *Whether Crestview wrongfully deducted future unpaid rent from the security deposit.*

¶5      *Whether the Landlord and Tenant Act prohibits an accelerated rent provision in a lease agreement.*

2

¶6    *Whether the Landlord and Tenant Act prohibits a lease agreement from imposing an obligation on the tenant to pay the landlord's attorney fees.*

## BACKGROUND

¶7    This is a landlord-tenant dispute in which tenants seek compensation for damages incurred after they breached their lease. Matthew Summers and Heidi Ames rented an apartment from Crestview Apartments on June 29, 2006. The written lease agreement was a 14-page document in small type print. The rent was $935 per month with a combined security and pet deposit of $2,170, for a term of one year. Summers obtained financing to buy a house and in late August 2006, informed Crestview that he would terminate the lease. On September 27, 2006, Crestview wrote to Summers and acknowledged the notice to vacate effective November 1, 2006.

¶8    A Crestview representative suggested that tenants terminating a lease often offer incentives to get people to move in to their apartment and finish their lease. Accordingly, Summers placed a classified ad in the newspaper for two weeks advertising the apartment at $935 per month with the first month rent free. Summers estimated he had 20-30 responses to the ad and several prospective tenants were shown the apartment and sent to the Crestview rental office. Crestview acknowledged that it did nothing specific nor took any extra effort to rent the unit. Crestview included the apartment with its other vacant units offered to prospective tenants and ran regular advertising in newspapers and online. Crestview's property manager testified that she was unaware of Summers' ads and the offer of one month's free rent. Additionally, Crestview's policy was to offer an apartment with a breached lease at the rate set by the breached lease. However, that

information was only available on Crestview's availability list and was not promoted in their advertising, which showed similar apartments for $980 per month. After Summers terminated the tenancy, Crestview had 26 similar apartments for rent, at least 12 of which were rented while Summers' apartment remained vacant.

¶9    Summers moved out of the apartment on October 13, 2006 with rent paid through the end of that month. On November 2, 2006, Crestview wrote Summers explaining that $168.25 would be deducted from the security deposit and the remainder would be retained until June 30 or until the apartment was re-rented. On November 6, 2006, Crestview issued a three-day notice to quit or pay rent for the month of November. The letter did not explain how Crestview would proceed if rent was not paid. On November 15, 2006, Crestview issued a "Statement of Deductions from the Security Deposit" showing total deductions, including rent through the end of the lease in June, of $6,505.75, including credit for the security deposit of $2,170. The next day, November 16, Crestview's collection agency notified Summers that he owed $9,758.63, the balance from the accelerated rental payments plus a 50% collection fee. Crestview testified that its normal policy was to give tenants two weeks to respond before turning an account over to collections, but had no explanation as to why it turned this account over the day after giving notice to Summers instead of following its normal policy. Summers' apartment was finally rented on June 1, 2007, just one month prior to expiration of the lease.

¶10    Summers sued for wrongful withholding of the security deposit, based on the Security Deposits Act, violations of the Landlord and Tenant Act, lack of mitigation

4

efforts, and misleading language contained in the written lease agreement.[1]  Following a bench trial, the District Court entered findings of fact, conclusions of law, and judgment on August 7, 2009, awarding Crestview recovery of $9,442.36 with interest and costs. Summers appeals.

## STANDARD OF REVIEW

¶11    This Court reviews the findings of a trial court sitting without a jury to determine if they are clearly erroneous.  M. R. Civ. P. 52(a); *Solem v. Chilcote*, 274 Mont. 72, 76, 906 P.2d 209, 211-12 (1995).  A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.  *Solem*, 274 Mont. at 76, 906 P.2d at 212. We review a district court's conclusions of law to determine if they are correct.  *Solem*, 274 Mont. at 76, 906 P.2d at 212.

## DISCUSSION

¶12    *Whether Crestview wrongfully deducted future unpaid rent from the security deposit.*

¶13    Summers argues that a lease provision permitting Crestview to deduct from the security deposit future damages in the form of accelerated rent is prohibited by law. Section 70-25-201(1), MCA, of the Security Deposits Act, provides:

---

[1]  Summers also named the collection agency as a defendant for violating 15 U.S.C. §§ 1692(e)(5) and (f)(1) of the Fair Debt Collection Practices Act, but that matter was settled and is not implicated here.

5

A landlord renting property covered by this chapter may deduct from the security deposit a sum equal to the damage alleged to have been caused by the tenant, together with a sum equal to the unpaid rent, late charges, utilities, penalties due under lease provisions, and other money *owing to the landlord at the time of deduction*, including rent owed under 70-24-441(3), and a sum for actual cleaning expenses, including a reasonable charge for the landlord's labor.

(Emphasis added.) The statute then provides that, "[a] person may not deduct or withhold from the security deposit any amount for purposes other than those set forth in this section." Section 70-25-201(4), MCA. Section 70-25-202(1), MCA, provides:

Every landlord, within 30 days subsequent to the termination of a tenancy or within 30 days subsequent to a surrender and acceptance of the leasehold premises, whichever occurs first, shall provide the departing tenant with a written list of any rent due and any damage and cleaning charges, brought after the provisions of 70-25-201 have been followed, with regard to the leasehold premises that the landlord alleges are the responsibility of the tenant. Delivery of the list must be accompanied by payment of the difference, if any, between the security deposit and the permitted charges set forth in 70-25-201.

Summers contends that § 70-25-201(4), MCA, prohibits withholding future rent from the security deposit, and the security deposit should have been returned, minus any cleaning deductions, 30 days after termination of the tenancy in October.

¶14 Crestview argues that § 70-24-201, MCA, allows a rental agreement to include terms not prohibited by statute, and that acceleration clauses are common in Montana *mortgages* without addressing why such clauses also apply to leases. Crestview claims a right to collect unpaid future rent as damages. Crestview argues that, even if deducting a portion of this rent from the security deposit was illegal, the security deposit was less than the final rent owed, and therefore there was no net difference in the final judgment against Summers.

6

¶15 Section 70-25-201(1), MCA, clearly allows a landlord to deduct from the security deposit "money owing to the landlord *at the time of deduction*, including rent owed" (emphasis added). Here however, Crestview deducted future rent by charging Summers rent in November for the remaining eight months of the lease term. This accelerated rent was not owed to Crestview at the time of deduction on November 2, 2006. Therefore, § 70-25-201(1), MCA, prohibited Crestview from deducting the accelerated future rent from the security deposit.

¶16 Furthermore, pursuant to § 70-25-202(1), MCA, "within 30 days subsequent to the termination of a tenancy or within 30 days subsequent to a surrender and acceptance of the leasehold premises," Crestview was required to provide Summers with "a written list of any rent due and any damage and cleaning charges, brought after the provisions of 70-25-201 have been followed." Summers vacated the apartment on October 13, 2006. Therefore, Crestview had until November 12, 2006, to provide Summers with a written accounting of any rent due. Even if Crestview still held Summers accountable for rent after termination of the lease, by withholding the entire $2,170 security deposit, Crestview violated § 70-25-202(1), MCA, by including rent allegedly owed beyond the 30-day time limit provided for settling deductions from the security deposit.

¶17 Crestview could not deduct future rent from the security deposit and withholding accelerated rent from the security deposit was illegal under § 70-25-201(1), MCA.

¶18 *Whether the Landlord and Tenant Act prohibits an accelerated rent provision in a lease agreement.*

7

¶19 Summers argues that accelerating the future rental balance and demanding it from the tenant converts the lease into a judgment against the tenant. Summers also contends this improperly imposes financial burdens on the tenant (including effects on credit), and conflicts with the landlord's duty to mitigate damages. Summers claims that accelerated rent is a liquidated damage provision and that § 28-2-721, MCA, prohibits liquidated damages, except when the amount of actual damage sustained by a breach would be impracticable or extremely difficult to fix.

¶20 The actual damages sustained by this breach were known and were not impracticable or extremely difficult to fix. Upon re-renting the apartment on June 1, 2007, Crestview knew exactly how much Summers owed as a result of breaching the lease and could have sent a final statement at that time. Crestview counters that liquidated damages are presumed enforceable unless the opposing party establishes that they are unconscionable. *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250.

¶21 The Landlord and Tenant Act provides that if a court finds, as a matter of law, that "a rental agreement or any provision thereof is unconscionable, the court may refuse to enforce the agreement or enforce the remainder of the agreement without the unconscionable provision to avoid an unconscionable result." Section 70-24-404(1)(a), MCA. An accelerated rent provision in a lease agreement is unenforceable if it is unconscionable.

¶22 Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the

8

part of the other party regarding acceptance of the provisions. *Iwen v. U.S. West Direct,* 1999 MT 63, ¶ 31, 293 Mont. 512, 977 P.2d 989; *Arrowhead,* ¶ 48. Crestview drafted the lease and Summers had no meaningful choice regarding acceptance of the accelerated rent provision. Summers could either accept or reject Crestview's standardized lease agreement without an opportunity to negotiate its terms. Crestview's property manager testified that tenants had never asked to change a pre-printed portion of their lease agreement.

¶23 In other contexts, we have determined that a variety of standardized forms of agreement are contracts of adhesion. *Iwen,* ¶ 29 ("U.S. West Direct's directory advertising order is a standardized form agreement, the terms of which Iwen was unable to negotiate and for which his only choice was to accept or reject."); *Kloss v. Edward D. Jones & Co.,* 2002 MT 129, ¶ 27, 310 Mont. 123, 54 P.3d 1 ("Kloss' [securities] agreements with Jones are clearly contracts of adhesion. They were standardized forms prepared by Jones and presented to Kloss who had no opportunity to negotiate the terms of the contracts if she chose to invest through Jones."); *Larsen v. W. States Ins. Agency,* 2007 MT 270, ¶ 14, 339 Mont. 407, 170 P.3d 956 (Employment agreement "was a standardized agreement, prepared by the superior party, that the weaker party had no opportunity to negotiate its terms, and the superior party did not explain it to the weaker party. The agreement between Larsen and Western qualifies as a contract of adhesion."); *Woodruff v. Bretz, Inc.,* 2009 MT 329, ¶ 9, 353 Mont. 6, 218 P.3d 486 (Bretz's purchase contract is a "standardized form of agreement drafted by Bretz which, as the District Court implicitly found, had superior bargaining power. Moreover, the contract was

9

presented to Woodruff whose choice was either to accept or to reject it without the opportunity to negotiate the preprinted terms. The contract thus qualifies as one of adhesion.").

¶24 The remaining question is whether the accelerated rent provision unreasonably favors Crestview. The accelerated rent provision permitted Crestview to collect eight months rent that was not then due upon Summers' breach of the lease. Crestview unreasonably benefited from Summers' breach by collecting rent not yet due, while simultaneously offering the apartment for rent. Under this provision, Summers would have to pay in advance for an apartment that was no longer in his possession. Crestview had no incentive to rent the vacant apartment since it had already charged rent through the end of the lease term.

¶25 Significantly, the Landlord and Tenant Act imposes a duty to mitigate damages. Section 70-24-401(1), MCA. Summers contends that Crestview acknowledged that it did nothing specific nor took any extra effort to rent the unit. In fact, Crestview's property manager was unaware of Summers' offer of one month's free rent and made no effort to inform potential tenants of the lower rent available for Summers' apartment. Crestview claims that it did what it always did to rent an apartment, and the District Court concluded that the "landlord acted reasonably to mitigate tenant's damages by placing the premises in its pool of available units shortly after the tenants physically vacated." Crestview leased 12 other apartments from December 2006 through May 2007.

¶26 This Court adheres to the following well-established principles of Montana contract law:

The rule in Montana is that a nondefaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by default. Whether the injured party violated his duty to mitigate damages is a question for the trier of fact when there is conflicting evidence. *Bronken's Good Time Co. v. J.W. Brown & Assoc.* (1983), 203 Mont. 427, 432-33, 661 P.2d 861, 864 (citations omitted). Furthermore, we recognize that a "damaged party is only expected to do what is reasonable under the circumstances and need not embark upon a course of action which may cause further detriment to him." *Romain v. Earl Schwartz Co.* (1989), 238 Mont. 500, 504, 779 P.2d 54, 56-7.

*Gierke v. Walker*, 279 Mont. 349, 354-55, 927 P.2d 524, 527 (1996).

¶27 An accelerated rent provision in a lease agreement undermines a landlord's duty to mitigate damages. Recovery of accelerated rent reduces the landlord's incentive to re-rent the apartment promptly. The tenant must pay for the remaining term of the lease before the rent would otherwise be due and without receiving any of the attendant benefits of possession of the apartment. Thus, we conclude that irrespective of a factual determination by the District Court that Crestview acted reasonably to mitigate damages, as a matter of law an accelerated rent provision in a lease agreement conflicts with the landlord's duty to mitigate damages under § 70-24-401(1), MCA.[2]

¶28 Clearly this accelerated rent provision unreasonably favors Crestview. A more equitable result would have been for Crestview to continue charging Summers rent on a monthly basis until the apartment was rented to a new tenant. This approach would not unreasonably favor either party, while maintaining the intent of the original agreement.

---

[2] While the District Court found that Crestview acted reasonably to mitigate damages, that finding was based on the fact that Crestview had placed the apartment back in its pool of vacant apartments. Our review of the record does not establish that this finding was clearly erroneous.

11

Thus, we conclude that the accelerated rent provision is unconscionable and therefore unenforceable.

¶29 Although Crestview cannot collect accelerated rent upon a tenant's breach of a lease, Crestview does retain other remedies under the Landlord and Tenant Act. Specifically, § 70-24-427(1), MCA, provides, "[i]f the rental agreement is terminated, the landlord has a claim for possession and for rent and a separate claim for actual damages for any breach of the rental agreement."

¶30 *Whether the Landlord and Tenant Act prohibits a lease agreement from imposing an obligation on the tenant to pay the landlord's attorney fees.*

¶31 The Landlord and Tenant Act permits a rental agreement to include "terms and conditions not prohibited by this chapter." Section 70-24-201(1), MCA. The Act provides: "[i]n an action on a rental agreement or arising under this chapter, reasonable attorney fees, together with costs and necessary disbursements, may be awarded to the prevailing party notwithstanding an agreement to the contrary." Section 70-24-442(1), MCA. But the Act specifically prohibits a rental agreement from providing that a party agrees "to waive or forego rights or remedies under this chapter" or "to indemnify the other party for that liability or the costs or attorney's fees connected therewith." Section 70-24-202, MCA. Summers argues that the language in the lease agreement that purports to make the tenants liable to pay the landlord's attorney fees is contrary to the Act.

¶32 The lease agreement here repeats at least four times that the tenant agrees to pay the landlord's attorney fees if the tenant breaches the lease. The "ATTORNEY FEES" section of the lease agreement explicitly states: "All legal fees and collection costs

12

incurred by Landlord due to Tenant's failure to remedy a breach shall be the responsibility of Tenant." Crestview claims despite the prohibition of § 70-24-202, MCA, that this attorney fee term is permitted by a provision in the Security Deposits Act and principles of contract interpretation. However, the Landlord and Tenant Act specifically provides that "reasonable attorney fees . . . may be awarded to the prevailing party *notwithstanding an agreement to the contrary*." Section 70-24-442(1), MCA (emphasis added). The attorney fee terms in the lease agreement here directly violate this statutory provision by binding the tenant to an absolute attorney fee obligation and attempting to avoid a discretionary award of attorney fees to the prevailing party as provided in the Act. The plain terms of § 70-24-442(1), MCA, prohibit this practice.

¶33 The lease agreement violates § 70-24-202(1), MCA, by requiring tenants to waive or forego their rights or remedies to a discretionary award of attorney fees to the prevailing party under the Landlord and Tenant Act. This Court has held that a provision in a lease agreement which stated "[a]cceptance of a refund of all or a portion of the deposit by tenant shall constitute a full and final release of landlord from any claims of tenant of any nature whatsoever," was illegal under § 70-24-202(1), MCA, because the provision attempted to waive tenants' right to request attorney fees under § 70-24-442(1), MCA. *Solem*, 274 Mont. at 79-80, 906 P.2d at 213-14. Similarly, we conclude that the Landlord and Tenant Act prohibits the attorney fee terms used in Crestview's lease agreement.

¶34 Having determined that both the accelerated rent and attorney fees provisions of the lease violate the Landlord and Tenant Act, we address the effect of a landlord's use of

13

such provisions. Section 70-24-403(1), MCA (2005), provides that "[a] provision prohibited by 70-24-202 included in a rental agreement is unenforceable." Since the Landlord and Tenant Act prohibits the contractual attorney fee provision in Crestview's lease, that provision is unenforceable.

¶35 Similarly, § 70-24-404(1)(a), MCA, provides that when a court concludes as a matter of law that "a rental agreement or any provision thereof is unconscionable, the court may refuse to enforce the agreement or enforce the remainder of the agreement without the unconscionable provision to avoid an unconscionable result." Therefore, the unconscionable accelerated rent provision is unenforceable.

¶36 The issue here is whether simply severing these provisions from the lease agreement is sufficient to protect tenants' statutory rights. The Wisconsin Supreme Court has reasoned that merely severing prohibited provisions from a lease agreement would not eliminate "the intimidation of tenants that the inclusion of such unenforceable clauses poses." *Baierl v. McTaggart*, 629 N.W.2d 277, ¶ 34 (Wis. 2001). The Wisconsin Court persuasively noted that such provisions would continue to appear in leases if the only legal repercussion was to sever such prohibited clauses:

> Landlords would have little incentive to omit such clauses and change their practice. A landlord could insert the clauses with relative impunity, knowing that the court will merely ignore this unfair trade practice by severing the clause.
> Not only would landlords likely suffer no consequences from the violation, but they would also reap the unfair benefit of the clause's inclusion—the potential intimidation that such a clause poses. By the undeterred inclusion of such clauses, tenants may continue to be intimidated into forgoing their legal rights.

*Baierl*, ¶¶ 34-35.

14

¶37 We similarly conclude that merely severing the prohibited rental provisions does not address the chilling effect that such provisions could continue to have on the exercise of tenants' statutory rights if the only consequence to a landlord for using such provisions is that they are found unenforceable by a court. As noted above, the law provides that "the court may refuse to enforce the agreement . . . to avoid an unconscionable result." Section 70-24-404(1)(a), MCA. In this case, to allow Crestview to enforce the rental agreement following inclusion of the accelerated rent and attorney fees provisions, together with Crestview's illegal deductions of future rent from the security deposit, would lead to an unconscionable result. Consequently, we hold that the entire lease agreement is unenforceable by Crestview.

¶38 Damages may also be available to Summers, which would further counter the chilling effect that prohibited lease provisions have on tenants exercising their statutory rights. The Landlord and Tenant Act, § 70-24-403(2), MCA (2005), provides "[i]f a party purposefully uses a rental agreement containing provisions known by him to be prohibited, the other party may recover, in addition to his actual damages, an amount up to 3 months' periodic rent." Crestview's provision requiring tenants to pay its attorney fees in any legal dispute is clearly prohibited by the Landlord and Tenant Act, and Crestview should have known that from simply reading the Act. Moreover, Crestview's use of the lease to collect future rent from Summers' deposit is clearly prohibited by law. Consequently, we remand this matter to the District Court to determine the amount of Summers' damages under § 70-24-403(2), MCA, for Crestview's use of a prohibited

attorney fees provision, the deduction of future rent from the security deposit, and the unconscionable accelerated rent provision.

¶39 In summary, we conclude that Crestview wrongfully deducted future unpaid rent from the security deposit; wrongfully imposed an unconscionable and unenforceable provision for accelerated rent upon breach; and wrongfully imposed a prohibited contractual obligation of attorney fees on Summers in violation of Montana law. We conclude that the entire lease agreement is unenforceable by Crestview. Crestview's cross-appeal is therefore moot. We vacate the District Court's award of damages and attorney fees to Crestview and hold that Summers is the prevailing party entitled to attorney fees. We remand to the District Court to determine reasonable attorney fees and costs. We also remand for a determination of an appropriate award under the provisions of § 70-24-403(2), MCA.

¶40 Reversed and remanded for further proceedings consistent with this opinion.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs and dissents.

¶41 I concur in the Court's Opinion through ¶ 35. I dissent from the Court's holding that the entire lease agreement is unenforceable by Crestview.

¶42 I do not dispute that the Court has the statutory right to declare the entire lease unenforceable under § 70-24-404(1)(a), MCA. However, I would conclude that because we have just declared for the first time that accelerated rent provisions and clauses requiring deduction of future rent from security deposits are unlawful, and that a prospective clause obliging tenants to pay a landlord's attorney fees is prohibited under the Landlord and Tenant Act, it is premature and unconscionable to declare the entire lease agreement unenforceable. I would refuse to enforce the offending clauses but hold the remainder of the lease valid. Such a holding would rectify the injustice to Summers without unduly prejudicing Crestview, while serving as a forewarning to other landlords who refuse to prospectively strike from their lease agreements those provisions here declared unlawful.

¶43 I reach this conclusion for a number of reasons. First, it bears noting that the parties here entered into a 1-year lease which obligated Summers to pay 12 monthly installments of rent. Two months into the lease, Summers notified Crestview that he was terminating his lease and did not intend to pay the balance of the rent due. While I believe we rightly conclude that future unpaid rent may not be deducted from a security deposit, the provision of § 70-25-201(1), MCA, on this point is not as clear as it could be. As we note at ¶ 13 of the Opinion, this provision permits a landlord to deduct from the security deposit "unpaid rent . . . and other money owing to the landlord at the time of

17

deduction." As Crestview knew by August 2006 that Summers was not going to pay any more rent, it may well have believed in November 2006 when it made the deductions that the unpaid rent was owing to it "at the time of deduction." Again, I am not disputing the correctness of the Court's conclusion that the deduction was wrongful and the clause is void; what I am saying is that without the benefit of a clear statutory or judicial declaration that such a deduction is not permitted, Crestview was arguably entitled to its interpretation of the statutory language.

¶44 We also conclude that an accelerated rent provision is unenforceable because it conflicts with the landlord's duty to mitigate damages under § 70-24-401(1), MCA. Opinion, ¶ 27. While correct in my view, this conclusion was likewise not inescapable; in fact, it takes us 5 pages of step-by-step analysis to reach it, in large part because there is no outright prohibition in § 70-24-202, MCA, or any other provision of the Landlord and Tenant Act against rent acceleration. For the reasons noted above in ¶ 43, and given the general rule that acceleration of unpaid rent upon breach of a lease is an otherwise acceptable remedy (*see e.g.* § 30-2A-109, MCA, addressing the option to accelerate payment under a consumer lease), I would not find that inclusion of this provision is so draconian that it compels a declaration that the entire lease is unenforceable.

¶45 It goes without saying that landlords around the state likely have the same or similar provisions in their form leases as those at issue here. Our determination that the inclusion of such clauses renders an entire lease unenforceable may well have dramatic consequences for these landlords, who—until this Opinion is published—will not be on notice that such lease provisions are unlawful.

18

¶46    Section 70-24-404(1)(a), MCA, provides that a court may refuse to enforce an offending agreement or "enforce the remainder of the agreement without the unconscionable provision to avoid an unconscionable result." I would pay heed to the statutory suggestion that we enforce the remainder of the contract without the offending provisions, so as "to avoid an unconscionable result," and I dissent from our refusal to do so. Crestview and other Montana landlords ought to have notice of our decision and time to correct their leases to comply with our statements of the law, before being placed at risk of having their existing leases nullified in their entirety.

¶47    I therefore concur in part and dissent in part.


                                    /S/ PATRICIA COTTER


Justice James C. Nelson joins the Concurrence and Dissent of Justice Patricia O. Cotter.


                                    /S/ JAMES C. NELSON


Justice Jim Rice, dissenting.

¶48    Although I agree that the attorney fee provision violates statute, I disagree with the Court's analysis of the remaining issues, particularly the holding that a residential rental agreement, under no circumstances, may contain a mutually agreed upon acceleration clause, and the ultimate holding which voids the entire agreement.

19

¶49 In taking up the issues here, we would do well to remember that the freedom to contract is a constitutional right. U.S. Const. art. I, § 10, cl. 1; Mont. Const. art. II, § 31. An analysis of the validity of contract provisions under governing statutes is premised on that foundation and balanced against the public's ability to implement contract regulation. "The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250; *see also Gibbons v. Huntsinger*, 105 Mont. 562, 573, 74 P.2d 443, 449 (1937).

¶50 From that beginning, it is then important to understand that the Montana Residential Landlord and Tenant Act of 1977 is premised upon uniform law, specifically, the Uniform Residential Landlord and Tenant Act of 1972. *See Kunst v. Pass*, 1998 MT 71, ¶ 29, 288 Mont. 264, 957 P.2d 1; Uniform Residential Landlord and Tenant Act (1972), 7B U.L.A. 285, 285-86 (2006). Various authorities have discussed the issues raised here in the context of the uniform act and generally accepted landlord-tenant legal principles, to which I refer below. I turn first to the acceleration clause, which the Court invalidates on the grounds that 1) it conflicts with the landlord's duty to mitigate, Opinion, ¶ 27, and 2) it is unconscionable, Opinion, ¶ 28.

¶51 The Montana Act allows a "landlord and a tenant [to] include in a rental agreement terms and conditions not prohibited by this chapter or other rule or law, including rent, term of the agreement, and other provisions governing the rights and obligations of the parties." Section 70-24-201(1), MCA. A term is prohibited if it:

(1) agrees to waive or forego rights or remedies under this chapter;

(2) authorizes any person to confess judgment on a claim arising out of the rental agreement; or

(3) agrees to the exculpation or limitation of liability resulting from the other party's purposeful misconduct or negligence or to indemnify the other party for that liability or the costs or attorney's fees connected therewith.

Section 70-24-202, MCA. If a rental agreement includes one of the above prohibited provisions, it is unenforceable. Section 70-24-403(1), MCA.

¶52 The acceleration clause in the Crestview agreement provides, in its entirety, as follows:

If any monthly installment under this agreement is not paid when due and remains unpaid after a date specified by a notice to Tenant, *the entire principal rent amount owed for the full lease term shall at once become due and payable at the option of the Landlord and judgment may be had for all said amounts due. The foregoing provision shall not relieve the Landlord of its obligation to mitigate damages.* In the event the rental premises is re-rented to another for full value prior to expiration of the lease term, Landlord shall file Notice of Partial Satisfaction of any judgment entered to the extent of the third party rental agreement.

Late fees and interest shall not accrue on amounts accelerated pursuant to this provision until said amounts could otherwise be charged late fees and interest pursuant to the relevant provisions of this Agreement.

(Emphasis added.) First, this clause clearly avoids the statutory prohibitions against relinquishing of rights, confessing of judgment, or exculpating from liability. Further, the clause incorporates a method by which Crestview, as landlord, may collect the damages resulting from a tenant's breach which is commonly recognized and approved. The *Restatement (Second) of Property: Landlord and Tenant* § 12.1 cmt. k (1977) provides the following insight about acceleration clauses within landlord-tenant agreements:

21

> The parties may provide in the lease that if the tenant defaults in the payment of rent or fails in some other way to perform his obligations under the lease, the total amount of rent payable during the term of the lease shall immediately become due and payable . . . . If the tenant abandons the premises, . . . the landlord may enforce the acceleration clause if he does not terminate the lease. In this event, the landlord will receive the rent for the remainder of the term from the tenant who abandoned, and is obligated to account to him for any rent received from a new tenant.

*See also Gray v. Kanavel*, 508 So. 2d 970, 971, 973 (La. App. 4th Cir. 1987); *Cf. Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 124-25 (Alaska 1991). Other authorities likewise recognize the propriety of this provision. 49 Am. Jur. 2d *Landlord and Tenant* § 583 (2006) ("[I]t is within the right of the parties to a lease to agree that the time for the payment of the rent might be accelerated, in certain contingencies."); 49 Am. Jur. 2d *Landlord and Tenant* § 547 ("[A] suit for future rent may be brought where the lease contains an acceleration clause . . . ."); 1 Am. Jur. 2d *Actions* § 110 (2005) (acceleration clauses allow suit in a single action); *see also* § 30-1-208, MCA (UCC provision allowing option to accelerate).

¶53    Unlike the Court, the *Restatement* does not view acceleration to be contrary to mitigation, but rather deems acceleration clauses to be reasonable if mitigation is employed to limit the damages. *Restatement (Second) of Property: Landlord and Tenant* § 12.1 cmt. k. The *Restatement*'s position is consistent with our statutes, § 70-24-401(1), MCA ("[t]he aggrieved party has a duty to mitigate damages"), and the rental agreement precisely required landlord mitigation: "The foregoing [accelerated rent] provision shall *not* relieve the Landlord of its obligation to mitigate damages." (Emphasis added.) The District Court concluded that Crestview "acted reasonably to mitigate [Summers']

22

damages." Although the Court states its agreement with the District Court's conclusion, it nonetheless holds that, as a matter of law, the acceleration clause here undermined Crestview's duty to mitigate damages. Opinion, ¶ 27 and n. 2. I believe this conclusion is unsupported by legal authorities generally and the record of this case.

¶54 The Court also concludes that, because "[a] more equitable result" could have been pursued by Crestview, the acceleration clause is unconscionable, a conclusion which enables the Court to refuse to enforce it. Opinion, ¶ 28. To be unconscionable, a contractual term must be "such that the weaker bargaining party had *no meaningful choice* regarding acceptance of the provisions" and "the contractual terms are *unreasonably favorable* to the drafter, usually the party with superior bargaining power." *Arrowhead Sch. Dist. No. 75*, ¶ 48 (citing *Iwen v. U.S. West Direct*, 1999 MT 63, ¶¶ 27-31, 293 Mont. 512, 977 P.2d 989) (emphasis added); *see also Restatement (Second) of Contracts* § 208 (1981).

¶55 However, according to the record, Summers had a meaningful choice as to the rental agreement and accompanying acceleration clause. The District Court recognized that "[t]he residential rental market in Missoula is large and [Summers] had *hundreds of alternatives* to contracting with [Crestview]." (Emphasis added.) Summers not only fails to dispute the District Court's statement, but admitted during oral argument that the rental agreement at issue is "unique to Crestview" and that other rental options were readily available. Summers had the clear opportunity to seek residency elsewhere under a different agreement. Summers thus had a meaningful choice. *See Chor v. Piper, Jaffray & Hopwood, Inc.*, 261 Mont. 143, 149-50, 862 P.2d 26, 30-31 (1993); *Hardin v.*

23

*Morningside of Jackson, L.L.C.*, 425 F. Supp. 2d 898, 904-06 (W.D. Tenn. 2006); *Parada v. Superior Ct.*, 98 Cal. Rptr. 3d 743, 758 (Cal. App. 4th Dist. 2009); *Black v. Of Kitchen Things II, Inc.*, 467 N.Y.S.2d 167, 169 (N.Y. Civ. Ct. 1983). I would conclude that the acceleration clause was valid and was not prohibited under § 70-24-404, MCA.

¶56 More troubling is the Court's willingness to predetermine that, as a matter of law, acceleration clauses in residential agreements are unenforceable. Opinion, ¶ 27 ("[I]rrespective of a factual determination by the District Court that Crestview acted reasonably to mitigate damages, as a matter of law an accelerated rent provision in a lease agreement conflicts with the landlord's duty to mitigate damages under § 70-24-401(1), MCA.") The Commission Comments to § 70-24-404, MCA, provide that "the *particular facts* involved in each case are of *utmost importance* since unconscionability may exist in some situations but not in others." (Emphasis added.) At the very least, the Court should refrain from adopting a bright-line rule which declares all acceleration clauses, regardless of the circumstances, are *ipso facto* unconscionable. Instead, as recommended by the Comments, we should judge the "particular facts" of each case. *See also Pierce v. Emigrant Mortgage Co.*, 463 F. Supp. 2d 221, 225 (D. Conn. 2006); *Pelphrey v. Cobb Co.*, 547 F.3d 1263, 1271 (11th Cir. 2008); *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 639 (D.C. Cir. 2008); *U.S. v. Beck*, 140 F.3d 1129, 1135 (8th Cir. 1998).

¶57 Because I would conclude the accelerated rent provision in the lease agreement was conscionable and enforceable, I would also affirm the District Court's holding which permitted Crestview to deduct accelerated rent from the security deposit. Section 70-25-201(1), MCA, governs a landlord's deductions from a tenant's security deposit:

24

A landlord renting property covered by this chapter may deduct from the security deposit a sum equal to the damage alleged to have been caused by the tenant, together with a sum equal to the unpaid rent, late charges, utilities, penalties due under lease provisions, *and other money owing to the landlord at the time of deduction*, including rent owed under 70-24-441(3), and a sum for actual cleaning expenses, including a reasonable charge for the landlord's labor.

(Emphasis added.) The statute then provides that "[a] person may not deduct or withhold from the security deposit any amount for purposes other than those set forth in this section." Section 70-25-201(4), MCA. The acceleration clause here states that "the entire principal rent amount owed for the full lease term *shall at once become due and payable . . . .*" (Emphasis added.) Thus, under the residential agreement at issue, the moment Summers defaulted on his payment of rent to Crestview, he "at once" owed previous unpaid rent as well as the future accelerated rent, subject only to the landlord's future obligation to mitigate. Section 70-25-201(1), MCA, therefore permits the deduction of accelerated rent from the security deposit because it validly became due, qualifying as "other money owing to the landlord at the time of deduction."

¶58 I concur with the Court's conclusion that the rental agreement improperly attempted to obtain Summers' waiver of the right to a discretionary award of attorney fees in the event Summers prevailed. Opinion, ¶ 33. Although § 70-24-442(1), MCA, essentially provides a saving mechanism for such unlawful attorney fee provisions by authorizing fee awards "notwithstanding an agreement to the contrary," our decision in *Solem v. Chilcote*, 274 Mont. 72, 79-80, 906 P.2d 209, 213-14 (1995) did not interpret this provision to save the agreement in question and therefore, in respect of *stare decisis*,

I believe this conclusion is mandated by that case. This may entitle Summers to an award of damages under § 70-24-403(2), MCA.

¶59 Finally, the Court annuls the entire agreement as a remedy. Given my conclusions above, I would affirm the agreement. Although the attorney fee provision at issue here is deemed a prohibited waiver of rights, I cannot conclude that it unreasonably favors Crestview, and is unconscionable, rendering it unenforceable. Even if Summers prevailed on the merits of his claims, which I conclude he did not, the statute would have awarded him fees regardless of the agreement's language to the contrary. Further, current law would have required a provision mandating a fee award to the landlord to be reciprocal to a prevailing tenant. Section 28-3-704, MCA. This term therefore was not unconscionable.

¶60 As to Crestview, the District Court's award of fees was valid because it was provided by statute, notwithstanding the provision of the flawed attorney fee provision. *See* § 70-24-442, MCA.

¶61 Except for the attorney fee issue discussed above in ¶ 58, I would affirm the District Court.

/S/ JIM RICE

26